FILED

October 08, 2009

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002141017

1  JULIAN BACH, ESQ., STATE BAR NO. 162421
   LAW OFFICE OF JULIAN BACH
2  17011 Beach Blvd., Suite 300
   Huntington Beach, California 92647
3  Telephone: (714) 848-5085
   Facsimile: (714) 848-5086
4
   Attorneys for Movant,
5  GAP FUND, LLC

6              UNITED STATES BANKRUPTCY COURT

7              EASTERN DISTRICT OF CALIFORNIA

8                 SACRAMENTO DIVISION

9  In re                              )   Case No. 08-24733-D-7
                                      )
10   LANNY  BRUCE  TOBE  and  DEBORAH  R)   Rs. No. JKB-01
   TOBE,                              )
11                                    )   Chapter 7
            Debtors.                  )
12  _____)   **DECLARATION OF JIM MACY IN**
   GAP FUND, LLC,                      )   **SUPPORT OF MOTION FOR RELIEF**
13                                    )   **FROM THE AUTOMATIC STAY**
            Movant,                    )
14  v.                                )   Hearing-
                                      )   Date:      November 18, 2009
15  LANNY BRUCE TOBE and DEBORAH R TOBE,)   Time:      10:00 a.m.
   Debtors; JOHN R ROBERTS, Chapter 7 Trustee, )   Place:     Courtroom 34
16                                    )              U.S. Bankruptcy Court
            Respondents.              )              501 "I" Street, 6th Fl
17                                    )              Sacramento, CA 95814
                                      )
18                                    )
                                      )
19                                    )
                                      )
20                                    )
                                      )
21  _____)

22

23

24

25

26

27

28                        1

# DECLARATION OF JIM MACY

I, Jim Macy, declare as follows:

1. I am over the age of eighteen and have personal knowledge of the facts contained in this declaration, and if called upon to testify thereto I could and would testify competently to the facts contained herein.

2. I am now, and at all times relevant hereto have been a principal of Movant Gap Fund, LLC ("Movant" herein). In such capacity, I have custody and control of the business records of Movant as they relate to the subject property of this action located at 4721 Winding Way, Sacramento, California 95841 ("subject property" herein), and to the loan transaction which is the subject of this action. I am familiar with the manner in which those records are compiled.

3. The records of Movant are made in the ordinary course of business by persons who have a business duty to Movant to make such records. The records were made at or near the time of the occurrence of the event or events of which they are of record. I have personally reviewed Movant's records as they relate to the subject transaction herein, and, as a result, I am qualified to testify to the facts herein.

4. On or about March 12, 2007, Movant funded a loan to Debtors Lanny B Tobe and Kensington B Tobe (the "Debtors") in the original principal sum of $1,300,000.00 plus interest at a rate as defined in the Interest Only Note. The loan is secured by a duly executed Deed of Trust ("Deed of Trust") against the subject property. Attached hereto as Exhibits A and B are copies of said Note and Deed of Trust.

5. Pursuant to the terms of the subject loan documents, the Debtors were to tender interest only payments in the amount of $12,458.33 per month, commencing May 1, 2007, at an interest rate current more fully set forth therein. Pursuant to the terms of the subject loan documents, the subject loan is to mature on April 1, 2027.

6. The Debtors defaulted under the terms of the subject loan by failing to make monthly payments, late charges, fees and costs.

1

1    7.    On April 14, 2008, the Debtors commenced the instant bankruptcy as a

2  Chapter 11 proceeding, and on September 4, 2009, the case was converted to the instant Chapter

3  7 proceeding.

4    8.    As of the date of this Declaration, the following is due and owing to

5  Movant on this subject loan:

6

7        Principal Balance                    $1,300,000.00

8        22 Monthly payments @ $12,458.33      $  274,083.26
         (01/01/2008 through 10/01/2009)
         Accrued Late Charges                  $    14,949.96
9        Foreclosure Fees and costs (est.)     $     8,916.47
         BK Attorneys' Fees (est.)             $     1,000.00
10       Less: Funds In Suspense               ($     7,911.56)

11       Total Amount Due and Owing            $1,591,038.13

12        Further, a payment comes due on November 1, 2009, and on the first day of each

13  month thereafter, with an additional late charge accruing each month if the payment is not

14  received within ten (10) days from when it first comes due.

15    9.    Based upon the attached Broker's Price Opinion, Movant alleges the

16  value of the subject property to be $1,750,000.00. Based upon the Debtors' Schedule D -

17  Creditors Holding Secured Claims, a copy of which is attached hereto as Exhibit D, Movant is

18  informed that there is a utility lien in favor of the City of Sacramento secured against the subject

19  property with a balance due and owing in the amount of $1,500.00, and that property taxes are in

20  default with the County of Sacramento in the amount of $16,760.00.

21    10.    It is my understanding that on properties which have been foreclosed

22  upon within the State of California, certain costs of sale are incurred during the sale of such

23  property. Movant's experiences indicate that those costs of sale consistently average

24  approximately seven percent (7%) of the gross sales amount for a brokerage fee, plus

25  miscellaneous fees consisting of escrow filing fee, document preparation, and title fees, which

26  consistently average one percent (1%) of the gross amount received at the sale.

27

28                                    2

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3    Executed this 2nd day of October, 2009, at Costa Mesa, California.

                              _____
                              Jim Macy, Declarant

EXHIBIT "A"

LN# 1070

# INTEREST ONLY NOTE

U.S.$ 1,300,000.00

COSTA MESA, CALIFORNIA
[CITY]        [STATE]

March 12, 2007

FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay
GAP FUND, LLC., CFL LICENSE NO. 603D218

, or order, the principal sum of
ONE MILLION THREE HUNDRED THOUSAND AND NO/100 ---------------------------------------------

Dollars, with
interest on the unpaid principal balance from the date of this Note, until paid, at the rate of      11.500
percent per annum. Interest shall be payable at      3151 AIRWAY AVENUE, SUITE P2
COSTA MESA, CA 92626                                              or such other place as the Note holder may.
designate, in consecutive monthly installments of
TWELVE THOUSAND FOUR HUNDRED FIFTY EIGHT AND 33/100 -------------------------------------
                                                              Dollars (U.S.$      12,458.33      ), on the
1ST day of each month beginning,   May 1, 2007              . Such monthly installments shall continue until
April 1, 2027       .              at which time the outstanding principal balance of the indebtedness evidenced by this Note shall also.
become due and payable.

If any monthly installment under this Note is not paid prior to the due date of the next monthly payment, the entire principal amount outstanding and
accrued interest thereon shall at once become due and payable at the option of the Note holder. The Note holder may exercise this option to accelerate
during any default by Borrower regardless of any prior forbearance if suit is brought to collect this Note, the Note holder shall be entitled to collect
all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of   10.000   percent of any monthly installment not received by the Note holder within
10       days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part without penalty. Any partial prepayment shall be applied against the principal
amount outstanding and shall not postpone the due date of any subsequent monthly installments. The amount of such installments shall however be
changed accordingly.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint
and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address
stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing
such notice by certified mail, return receipt requested, to the Note holder at the address stated in the first paragraph of this Note, or at such other address
as may have been designated by notice to Borrower.

The indebtedness evidenced by this Note is secured by a Deed of Trust, dated   March 12, 2007      , and reference is made to the
Deed of Trust for rights as to acceleration of the indebtedness evidenced by this Note, including paragraph 17 which provides as follows:
"Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower
without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) the
creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon
the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender
may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived
such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach
agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this
Deed of Trust shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph
17 and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall
release Borrower from all obligations under this Deed of Trust and the Note. If Lender exercises such option to accelerate, Lender shall
mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30
days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior
to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by
paragraph 18 hereof."

This Note is subject to Section 2966 of the Civil Code, which provides that the holder of this Note shall give written notice to the trustor, or his successor
in interest, of prescribed information at least 90 but not more than 150 days before any balloon payment is due.

4721 WINDING WAY
SACRAMENTO, CA 95841

[PROPERTY ADDRESS]

LANNY B. TOBE

KENSINGTON B. TOBE   3/13/07

A CERTY OF HELD TITLE COMPANY
THAT THIS FOREGOING A TRUE AND
CORRECT THE ORIGINAL.

SEE:

(EXECUTE ORIGINAL ONLY)

**EXHIBIT "B"**

SECURITY UNION TITLE

WHEN RECORDED MAIL TO:
GAP FUND, LLC. CFL LIC.#603D218
3151 AIRWAY AVENUE, SUITE P2
COSTA MESA, CA 92626

LN# 1070

7002 1131 0

Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK 20070321 PAGE 1171
Check Number 0467
Wednesday, MAR 21, 2007 12:38:57 PM
Ttl Pd    $30.00         Nbr-0004504380

MLB/11/1-8

―――――――――――― SPACE ABOVE THIS LINE FOR RECORDER'S USE ――――――――――――

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **March 12, 2007**.

The trustor is **LANNY B. TOBE AND KENSINGTON B. TOBE, HUSBAND AND WIFE AS JOINT TENANTS**

("Borrower").

The trustee is
**FCI NATIONAL LENDER SERVICES**                                ("Trustee").
The Beneficiary is
**GAP FUND, LLC., CFL LICENSE NO. 603D218**

which is organized and existing under the laws of    **CALIFORNIA**
and whose address is **3151 AIRWAY AVENUE, SUITE P2**
**COSTA MESA, CA 92626**                                          ("Lender").
Borrower owes Lender the principal sum of
ONE MILLION THREE HUNDRED THOUSAND AND NO/100 ----------------------------------------
Dollars (U.S. $    **1,300,000.00**    ). This debt is evidenced by Borrower's note dated the
same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid
earlier, due and payable on **April 1, 2027**.    This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of
the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in **SACRAMENTO**                                County, California:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

WHICH HAS THE PROPERTY ADDRESS OF:
ADDRESS:    4721 WINDING WAY
CITY    :    SACRAMENTO
STATE   :    CALIFORNIA
ZIP     :    95841

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

Borrower's Initials

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(page 1 of 7 pages)
Form 3805    9/90

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally-related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts o be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

Borrower's Initials _____ _____

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(page 2 of 7 pages)
Form 3005    9/90

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security

Borrower's Initials ___

Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security

Borrower's Initials _____ _____

Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release

Borrower's Initials ☐☐☐ ☐☐☐

of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; and (c) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

Borrower's Initial: ___

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | ☐ | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

3-13-07

LANNY B. TOBE                         KENSINGTON B. TOBE

―――――――― [Space Below This Line For Acknowledgement] ――――――――

STATE OF CALIFORNIA,
COUNTY OF _____ } ss.

On _____ before me, _____ Notary Public

personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

T. PETERS
Comm. # 1498103
NOTARY PUBLIC - CALIFORNIA
Sacramento County
My Comm. Expires July 5, 2008
(Notarial Seal)

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(page 7 of 7 pages)
Form 3005     9/90

# DESCRIPTION



ALL THAT PORTION OF TRACTS 45 AND 63, AS SHOWN ON THE PLAT OF DEL PASO VALE, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, RECORDED IN BOOK 12 OF MAPS, MAP NO. 7, RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF TRACT 63 OF DEL PASO VALE; THENCE NORTH 1° 46' 30" WEST 187.8 FEET ALONG THE WEST LINE OF SAID TRACT 45; THENCE NORTH 78° 10' EAST 597.7 FEET; THENCE SOUTH 9° 47' EAST 271 FEET; THENCE NORTH 87° 56' EAST 33.9 FEET TO A POINT IN THE EAST LINE OF SAID TRACT 45; THENCE SOUTH 1° 46' 30" EAST 67.7 FEET TO THE SOUTHEAST CORNER OF TRACT 45; THENCE CONTINUING SOUTH 1° 46' 30" EAST 60.6 FEET TO THE CENTER LINE OF WINDING WAY ROAD; THENCE ON A CURVE TO THE LEFT, RADIUS 426.86 FEET; CENTRAL ANGLE 11° 23' CHORD BEARS NORTH 88° 38' WEST 168.5 FEET; THENCE SOUTH 79° 59' WEST 84.7 FEET; THENCE ON A CURVE TO THE RIGHT RADIUS 382.75 FEET; CENTRAL ANGLE 18° 53' CHORD BEARS SOUTH 89° 25' 30" WEST 125.58 FEET; THENCE NORTH 81° 08' WEST 244.6 FEET; THENCE ON A CURVE TO THE LEFT, RADIUS 358.16 FEET, CENTRAL ANGLE 6° 54' CHORD BEARS NNORTH84° 45' WEST 43.1 FEET TO A POINT IN THE WEST LINE OF SAID TRACT 83, IN THE CENTER LINE OF SAID WINDING WAY; THENCE NORTH 1° 46' 30" WEST 45.7 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

ALL THAT PORTION OF LOT 131 AS SHOWN ON THE PLAT OF ARCADE PARK, RECORDED IN BOOK 13 OF MAPS, MAP NO. 30, RECORDS OF SAID COUNTY, LYING AND BEING EASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A 1 1/2 INCH IRON PIPE MONUMENT STAMPED "R.E. 2675", AND SET TO MARK THE SOUTHWEST CORNER OF LOT 74 AS SHOWN ON THE OFFICIAL MAP OF OAKVALE NO. 3, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO COUNTY ON SEPTEMBER 29, 1929, IN BOOK 19 OF MAPS, MAP NO. 50, SAID IRON PIPE MONUMENT BEING LOCATED NORTH 01° 46' 30" WEST 1.58 FEET FROM THE CORNER COMMON TO LOTS 131 AND 139, AS SHOWN ON THE PLAT OF ARCADE PARK; THENCE FROM SAID POINT OF BEGINNING, SOUTH 01° 46' 30" EAST 154.03 FEET ALONG THE EAST LINE OF SAID LOT 131 TO A 1 1/2 INCH IRON PIPE MONUMENT STAMPED "R.E. 2675"; THENCE SOUTH 27° 49' 45" WEST 62.77 FEET TO A 11/2 INCH IRON PIPE MONUMENT STAMPED "R.E. 2675" SET ON THE NORTH LINE OF WINDING WAY; THENCE SOUTH 01° 46' 30" EAST 25.00 FEET TO A POINT IN THE CENTER LINE OF SAID WINDING WAY, LOCATED SOUTH 88° 05' 15" WEST 31.00 FEET FROM THE SOUTHEAST CORNER OF SAID LOT 131.

EXHIBIT "C"

1

## DECLARATION OF MARK WATERMAN

2         I, MARK WATERMAN, declare as follows:

3      1.     I am over eighteen (18) years of age and a citizen of the United States of

4 America. I make this declaration based upon the facts, all of which are within my personal

5 knowledge. If called upon as a witness, I could and would competently testify thereto.

6      2.     I am a licensed California real estate broker. I am familiar with residential

7 properties located in the Sacramento County area.

8      3.     In September 2009, I was requested to prepare a Broker's Price Opinion and form

9 an opinion of value of the subject property located at 4721 Winding Way, Sacramento, California

10 95841 (the "subject property"). Attached hereto as Exhibit "1" is a copy of the Broker's Price

11 Opinion.

12      4.     As can be seen from the attached Broker's Price Opinion, I estimate that the

13 value of the subject property as of September 15, 2009 to be approximately $1,750,000.00.

14      I declare under penalty of perjury under the laws of the United States of America that

15 the foregoing is true and correct.

16      Executed this _7th_ day of October, 2009, at Sacramento, California.

17

18               MARK WATERMAN, Declarant

19

20

21

22

23

24

25

26

27

28

                         1



| Address: | 4721 WINDING WAY SACRAMENTO CA 95841 | | | | | |
|---|---|---|---|---|---|---|
| Borrower Name: Tobe | | | Inspection Date: | 9/15/2009 | Delivery Date: | 9/15/2009 |
| Loan Number: Tobe | | APN: unknown | Property ID: | 3935209 | Order ID: | 839100 |
| Order Tracking ID: Tobe | Tracking ID 1: Tobe | | Tracking ID 2: n/a | | Tracking ID 3: n/a | |

### I. General Conditions

| | |
|---|---|
| Property Type: | SFR |
| Occupancy: | Occupied |
| Property Condition: | Excellent |
| Estimated Exterior Repair Cost: | $0 |
| Estimated Interior Repair Cost: | $0 |
| Total Estimated Repairs: | $0 |
| Condition Comments: | Property is in Excellent condition. |
| HOA? No | |

### II. Subject Sales & Listing History

Current Listing Status: Subject is currently listed.

| Date Listed | Date Sold | List Price | Sale Price | Notes |
|---|---|---|---|---|
| 07/19/2009 | | $ 2,189,000 | $ 0 | |

### III. Neighborhood & Market Data

| | |
|---|---|
| Location Type: | Suburban |
| Local Economy Is: | Slow |
| Sales Price In this Neighborhood: | Low: $580,000    High: $1,250,000 |
| Market for this type of property has: | Decreased 3 % in the past 6 months. |
| Normal Marketing Days: | >180 |
| Neighborhood Comments: | Very nice area of Sacramento. |

### IV. Current Listings

| | Subject | Listing #1 | Listing #2 | Listing #3 * |
|---|---|---|---|---|
| Street Address | 4721 WINDING WAY | 2806 Wrendale | 4300 Berrendo | 2013 Rockwood |
| | SACRAMENTO, CA | SACRAMENTO, CA | SACRAMENTO, CA | SACRAMENTO, CA |
| Zip Code | 95841 | 95821 | 95864 | 95864 |
| Datasource | MLS | MLS | MLS | MLS |
| Miles to Subj. [2] | | 1.91 [1] | 3.68 [1] | 3.08 [1] |
| List Price $ | $ 2,189,000 | $1,499,999 | $1,150,000 | $2,400,000 |
| Days on Mkt. | | 6 | 132 | 110 |
| Age | 8 | 3 | 7 | 18 |
| Condition | Excellent | Excellent | Excellent | Excellent |
| Style/Design | 2 Stories SFD | 2 Stories SFD | 2 Stories SFD | 2 Stories SFD |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 5000 | 4961 | 5285 | 5287 |
| Bdrm/F Bths/½ Bths | 4/6 | 5/3/1 | 6/5/3 | 5/4/1 |
| Total Room # | 12 | 12 | 11 | 11 |
| Garage Style/Stalls | None | None | None | None |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Pool/Spa | Pool – Yes | Pool – Yes | | Pool – Yes |
| Lot Size | 4.3 Ac. | .75 Ac. | .9 Ac. | 1.06 Ac. |
| Other | | | | |

* Listing #3 is the most comparable listing to the subject.

Comments (why the comparable listing is superior or inferior to the subject).

Listing #1: Fair Market–Closest comp to subject. Had to extend search critera to within 2 miles to find similar property types. Inferior to subject due to lot size.

Listing #2: Fair Market–Had to extend search critera to within 2 miles to find similar property types. Inferior to subject, due to lot size.

Listing #3: Fair Market–Very similar to subject property. Had to extend search critera to within 2 miles to find similar property types. Much smaller lot than subject. Inferior to subject due to lot size.

[1] Comp's "Miles to Subject" was calc'd by the system.    [2] Comp's "Miles to Subject" provided by Broker.    [3] Subject Sqft based upon as–is sale price.

## V. Recent Sales

| | Subject | Sold #1 | Sold #2 * | Sold #3 |
|---|---|---|---|---|
| Street Address | 4721 WINDING WAY | 6310 Rio Bonito | 2211 Glancy | 4943 Sudsbury |
| | SACRAMENTO, CA | CARMICHAEL, CA | CARMICHAEL, CA | CARMICHAEL, CA |
| Zip Code | 95841 | 95608 | 95608 | 95608 |
| Datasource | MLS | MLS | MLS | MLS |
| Miles to Subj. [2] | | 3.13 [1] | 2.85 [1] | 3.62 [1] |
| List Price $ | $ 2,189,000 | $2,589,000 | $1,194,000 | $1,150,000 |
| Sale Price $ | $ | $2,200,000 | $1,095,000 | $950,000 |
| Type of Financing | | Conventional | Conventional | Conventional |
| Date of Sale | | 2/9/2009 | 12/8/2008 | 7/6/2009 |
| Days on Mkt. | | 9 | 16 | 176 |
| Age (# of Years) | 8 | 4 | 11 | 21 |
| Condition | Excellent | Excellent | Excellent | Excellent |
| Style/Design | 2 Stories SFD | 2 Stories SFD | 2 Stories SFD | 1 Story SFD |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 5000 | 4318 | 4237 | 4200 |
| Bdrm/F Bths/½ Bths | 4/6 | 4/3/2 | 5/4/1 | 4/4/1 |
| Total Room # | 12 | 10 | 10 | 10 |
| Garage Style/Stalls | None | None | None | None |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Pool/Spa | Pool – Yes | Pool – Yes | Pool – Yes | Pool – Yes |
| Lot Size | 4.3 Ac. | .62 Ac. | .37 Ac. | .26 Ac. |
| Other | | | | |
| Adjustment $+/– (See notes below) | | +$132,000 | +$132,000 | +$132,000 |
| Adjusted Value | | $2,332,000 | $1,227,000 | $1,082,000 |

\* Sold #2 is the most comparable sale to the subject.

Reasons for Adjustments (Why the comparable is superior or inferior to the subject.)

**Sold #1:** Fair Market ADJ. for SQFT and lot. Had to extend search critera to closed within one year and up to 4 miles away. SQFT also had to be extended to within +/– 1000SQFT few homes in this price range/condition

**Sold #2:** Fair Market ADJ. for SQFT and lot. Had to extend search critera to closed within one year and up to 4 miles away. SQFT also had to be extended to within +/– 1000SQFT. Very few homes in this price range/condition

**Sold #3:** Fair Market ADJ. for SQFT and lot. Had to extend search critera to closed within one year and up to 4 miles away. SQFT also had to be extended to within +/– 1000SQFT. Very few homes in this price range/condition

[1] Comp's "Miles to Subject" was calc'd by the system.   [2] Comp's "Miles to Subject" provided by Broker.   [3] Subject $/ft based upon As-Is Value.

## VI. Marketing Strategy

| | "As–is" Value | "Repaired" Value | Comments Regarding Pricing Strategy: |
|---|---|---|---|
| Suggested List Price: | $1,850,000 | $1,850,000 | Value based on market knowledge, property location, and overall market. Property very hard to comp out due to lack of comparable inventory. |
| Sale Price: | $1,750,000 | $1,750,000 | |
| * Clear Capital Reviewer's Value Opinion: | $1,750,000 | $1,750,000 | |

*Please see Clear Capital Quality Assurance Comments Addendum

## VII. Clear Capital Quality Assurance Comments Addendum

| | "As–is" Value | "Repaired" Value | Reviewer Notes: |
|---|---|---|---|
| Reviewer's Value Opinion: | $1,750,000 | $1,750,000 | The reviewer agrees with the broker's value. The comparables are reasonably similar and the broker's value conclusion is bracketed by the data set. |

4721 WINDING WAY, SACRAMENTO, CA 95841, Loan: Tobe, Suggested List: $1,850,000 Sale: $1,750,000 Suggested Repaired: $1,850,000 Sale: $1,750,000



'Subject: 4721 Winding Way' [View: Address Verification]



'Subject: 4721 Winding Way' [View: Front]

3



'Subject: 4721 Winding Way' [View: Street]



'Subject: 4721 Winding Way' [View: Front]

**VIII. Property Images (*continued*)**

4721 WINDING WAY, SACRAMENTO, CA 95841, Loan: Tobe, Suggested List: $1,850,000 Sale: $1,750,000 Suggested Repaired: $1,850,000 Sale: $1,750,000



'Listing Comp 1: 2806 Wrendale' [View: Front]



'Listing Comp 2: 4300 Berrendo' [View: Front]

VIII. Property Images (*continued*)

4721 WINDING WAY, SACRAMENTO, CA 95841, Loan: Tobe, Suggested List: $1,850,000 Sale: $1,750,000 Suggested Repaired: $1,850,000 Sale: $1,750,000



'Listing Comp 3: 2013 Rockwood' [View: Front]



'Sold Comp 1: 6310 Rio Bonito' [View: Front]

VIII. Property Images (*continued*)

4721 WINDING WAY, SACRAMENTO, CA 95841, Loan: Tobe, Suggested List: $1,850,000 Sale: $1,750,000 Suggested Repaired: $1,850,000 Sale: $1,750,000



'Sold Comp 2: 2211 Glancy' [View: Front]



'Sold Comp 3: 4943 Sudsbury' [View: Front]

Subject Property: 4721 Winding Way, Sacramento, CA 95841



SUBJECT: 4721 Winding Way, SACRAMENTO, CA 95841

© 2009 MapQuest, Inc.    © 2009 ClearCapital.com, Inc.    ©2009 NAVTEQ

| Listing/Sale | Address | Dist. to Subject | Mapping Accuracy |
|---|---|---|---|
| Subject | 4721 Winding Way , Sacramento, CA 95841 | | Parcel Match |
| Current Listing | 2806 Wrendale, SACRAMENTO, CA 95821 | 1.91 Miles [1] | Parcel Match |
| Current Listing | 4300 Berrendo, SACRAMENTO, CA 95864 | 3.68 Miles [1] | Parcel Match |
| Current Listing | 2013 Rockwood, SACRAMENTO, CA 95864 | 3.08 Miles [1] | Parcel Match |
| Recent Sale | 6310 Rio Bonito, CARMICHAEL, CA 95608 | 3.13 Miles [1] | Parcel Match |
| Recent Sale | 2211 Glancy, CARMICHAEL, CA 95608 | 2.85 Miles [1] | Parcel Match |
| Recent Sale | 4943 Sudsbury, CARMICHAEL, CA 95608 | 3.62 Miles [1] | Parcel Match |

* Comparables in *italics* are not included in the ClearMap due to distance and/or ability to be GeoCoded.
[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the broker.

8

Location: SACRAMENTO, CA 95841 Date: 09/15/2009

### Unemployment Rate

| | Low | | | | High |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ○ | ○ | ◉ | ○ |
| CA | ○ | ○ | ○ | ◉ | ○ |
| NATION | ○ | ○ | ◉ | ○ | ○ |

### Foreclosure Rate

| | Low | | | | High |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ○ | ○ | ◉ | ○ |
| CA | ○ | ○ | ○ | ◉ | ○ |
| NATION | ○ | ○ | ○ | ◉ | ○ |

### Supply (New Homes)

| | Low | | | | High |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ◉ | ○ | ○ | ○ |
| CA | ○ | ◉ | ○ | ○ | ○ |
| NATION | ○ | ◉ | ○ | ○ | ○ |

### Supply (Re-Sales)

| | Low | | | | High |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ○ | ◉ | ○ | ○ |
| CA | ○ | ○ | ◉ | ○ | ○ |
| NATION | ○ | ○ | ○ | ◉ | ○ |

### Real Estate Values (Past 6 Months)

| | % Decrease Greater than -15% | -15% to -5% | Stable | 5% to 15% | % Increase Greater than 15% |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ◉ | ○ | ○ | ○ |
| CA | ○ | ◉ | ○ | ○ | ○ |
| NATION | ○ | ◉ | ○ | ○ | ○ |

### Real Estate Values (Next 6 Months)

| | % Decrease Greater than -15% | -15% to -5% | Stable | 5% to 15% | % Increase Greater than 15% |
|---|---|---|---|---|---|
| SACRAMENTO | ○ | ◉ | ○ | ○ | ○ |
| CA | ○ | ◉ | ○ | ○ | ○ |
| NATION | ○ | ◉ | ○ | ○ | ○ |

### Average Days On Market

| | |
|---|---|
| SACRAMENTO | (65 Days) |
| CA | (84 Days) |
| NATION | (114 Days) |

Sample Size: SACRAMENTO (669) CA (42251) NATION (130008). This report shows samples gathered in the last 90 days.

**Disclaimer**
This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.

Unless otherwise specifically agreed to in writing:
This document is provided solely for the use of the Clear Capital account holder, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.

**EXHIBIT "D"**

B6D (Official Form 6D) (12/07)

In re _Tobe, Lanny Bruce and Deborah R. Tobe_ ,                    Case No. _08-24733-D-11_
                        **Debtor(s)**                                                        (if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H–Husband W–Wife J–Joint C–Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, if Any |
|---|---|---|---|---|---|---|---|
| Account No:<br>Creditor # : 1<br>Americredit<br>Attn: Bankruptcy<br>801 Cherry St. Ste. 3900<br>Fort Worth TX 76102 | C | 2006<br>2004 Lexus (50K)<br>2004 Lexus RX330 (30K)<br><br>Value: $ 18,000.00 | | | X | $ 19,000.00 | $ 1,000.00 |
| Account No:<br>Creditor # : 2<br>City of Sacramento Utilities<br>915 I St.<br>Rm. #1214<br>Sacramento CA 95814 | C | 07-08<br>Utility Lien<br>4721 Winding Way, Sacramento, CA 95841<br><br>Value: $ 2,200,000.00 | | | | $ 1,500.00 | $ 0.00 |
| Account No: 7548<br>Creditor # : 3<br>City of Sacramento Utilities<br>915 I St.<br>Rm. #1214<br>Sacramento CA 95814 | C | 07-08<br>Utility Lien<br>3311 Fair Oaks Blvd.,<br>Sacramento, CA<br><br>Value: $ 1,200,000.00 | | | | $ 1,000.00 | $ 0.00 |

2   continuation sheets attached

Subtotal $     $ 21,500.00     $ 1,000.00
(Total of this page)

Total $
(Use only on last page)

(Report also on Summary of Schedules.)      (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data)

In re _Tobe, Lanny Bruce and Deborah R. Tobe_ ,     Case No. _08-24733-D-11_

        **Debtor(s)**                                            **(If known)**

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien  H—Husband W—Wife J—Joint C—Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No: _0000_  Creditor # : 4 Co. of Sacramento Tax Collect Attn: Bankruptcy Unit 700 H St. Rm. #1710 Sacramento CA 95814 | C | 07-08  Property Taxes  4721 Winding Way, Sacramento, CA 95841  Value: $ 2,200,000.00 | | | | $ 16,760.00 | $ 0.00 |
| Account No: _6328_  Creditor # : 5 Ford Motor Credit P.O. Box 537901 Livonia MI 48159-7901 | C | Auto Loan  2003 Lincoln Navigator (85K)  Value: $ 13,000.00 | | | | $ 15,000.00 | $ 2,000.00 |
| Account No:  Creditor # : 6 GAP Managers 3151 Airway Avenue, Ste.P2 Costa Mesa CA 92626 | C | 2007  First Deed of Trust  4721 Winding Way, Sacramento, CA 95841  Value: $ 2,200,000.00 | X | X | X | $ 1,350,000.00 | $ 0.00 |
| Account No:  Creditor # : 7 Marriot Vacation Club P.O. Box 8038 Lakeland FL 33802 | C | 2004/5  Timeshare  Timeshare  Value: $ 1.00 | | | X | $ 47,000.00 | $ 46,999.00 |
| Account No: _0669_  Creditor # : 8 Sac. Suburban Water Attn: Bankruptcy/Manager 3701 Marconi Ave. #100 Sacramento CA 95821 | C | 07-08  Utility Lien  4721 Winding Way, Sacramento, CA 95841  Value: $ 2,200,000.00 | | | | $ 290.00 | $ 0.00 |
| Account No: _1647_  Creditor # : 9 San Diego City Treasurer Attn: Bankruptcy/Manager P.O. Box 129009 San Diego CA 92112 | C | 06-08  Property Taxes  Timeshare/Lawrence Welk Vacation  Value: $ 1.00 | | | | $ 200.00 | $ 199.00 |

Sheet no. 1 of 2 continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal $ (Total of this page)     $ 1,429,250.00     $ 49,198.00

Total $ (Use only on last page)

(Report also on Summary of Schedules.)     (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data)

B6D (Official Form 6D) (12/07) - Cont.

In re <u>Tobe, Lanny Bruce and Deborah R. Tobe</u>,        Case No. <u>08-24733-D-11</u>
                    Debtor(s)                                        (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien  H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No:  Creditor # : 10 Wachovia Dealer Services Attn: Correspondence P.O. Box 168048 Irving TX 75016-8048 | C | 2008 401K Loan Husband 401K  Value: $ 80,000.00 | | | | $ 26,160.00 | $ 0.00 |
| Account No:  Creditor # : 11 Wachovia Dealer Services Attn: Correspondence P.O. Box 168048 Irving TX 75016-8048 | C | 2008 401K Loan Husband 401K  Value: $ 80,000.00 | | | | $ 7,000.00 | $ 0.00 |
| Account No:  Creditor # : 12 Washington Mutual Attn: Bankruptcy P.O. Box 201079 Stockton CA 95202 | C | 2005 First Deed of Trust 3311 Fair Oaks Blvd., Sacramento, CA  Value: $ 1,200,000.00 | X | X | X | $ 933,014.00 | $ 0.00 |
| Account No:   Value: | | | | | | | |
| Account No:   Value: | | | | | | | |
| Account No:   Value: | | | | | | | |

Sheet no. 2   of  2   continuation sheets attached to Schedule of Creditors
Holding Secured Claims

| | | |
|---|---|---|
| Subtotal $ (Total of this page) | $ 966,174.00 | $ 0.00 |
| Total $ (Use only on last page) | $ 2,416,924.00 | $ 50,198.00 |
| | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |

1
2
3
4
5
6
7
8
9
10
11
12                              **EXHIBIT "E"**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# POST-PETITION PAYMENTS RECEIVED

| | Date Rec'd | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/1/2008 | 7/14/2008 | 74 | RegPmt | $0.00 | $0.00 | $12,458.33 | $0.00 | $1,245.83 | ($13,704.16) |
| 6/1/2008 | 9/25/2008 | 116 | RegPmt | $0.00 | $0.00 | $12,458.33 | $0.00 | $1,245.83 | ($13,704.16) |
| 7/1/2008 | 11/26/2008 | 148 | RegPmt | $6,969.70 | $0.00 | $12,458.33 | $0.00 | $1,245.83 | ($6,734.46) |
| 7/11/2008 | 7/11/2008 | 0 | Oth | $6,969.90 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.90 |
| 7/11/2008 | 7/11/2008 | 0 | Oth | $6,969.90 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.90 |
| 8/1/2008 | 8/1/2008 | 0 | Oth | $6,969.90 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.90 |
| 8/1/2008 | 1/29/2009 | 181 | RegPmt | $6,969.70 | $0.00 | $12,458.33 | $0.00 | $1,245.83 | ($6,734.46) |
| 9/2/2008 | 9/2/2008 | 0 | Oth-90 | $6,969.70 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.70 |
| 11/3/2008 | 11/3/2008 | 0 | Oth-90 | $6,969.70 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.70 |
| 1/6/2009 | 1/6/2009 | 0 | Oth-90 | $6,969.70 | $0.00 | $0.00 | $0.00 | $0.00 | $6,969.70 |
| 3/11/2009 | 3/11/2009 | 0 | Oth-90 | $6,970.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,970.00 |
| | | | | $118,312.84 | $0.00 | $104,172.13 | $0.00 | $6,229.15 | $7,911.56 |